United States District Court
Southern District of Texas
**ENTERED**
July 23, 2019
David J. Bradley, Clerk

| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| Victor Antonio Sanchez,<br>　　Petitioner,<br><br>v.<br><br>Lorie Davis,<br>Director, Texas Department of<br>Criminal Justice, Correctional<br>Institutions Division,<br>　　Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action H-17-3666 |

# Memorandum and Recommendation

Victor Antonio Sanchez is serving twenty-eight years in prison for murder. Sanchez filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (D.E. 1) Lorie Davis moved for summary judgment. The court recommends that Davis's motion for summary judgment be granted and Sanchez's petition be denied with prejudice.

1. *Background*

On May 25, 2014, Sanchez drove his car the wrong way on a public roadway while intoxicated and collided with Efrain Salazar's car. Salazar was fatally injured in the crash. (D.E. 14-15 at 2.) On March 27, 2015, Victor Sanchez pleaded guilty to murder in the 230th Judicial District Court for Harris County, Texas. (D.E. 14-23 at 6–7.)

The Harris County district court sentenced Sanchez to twenty-eight years in prison on June 22, 2015. (D.E. 14-12 at 8.) Sanchez appealed his sentence to the Court of Appeals for the First District of Texas. His lawyer filed an *Anders* brief. (D.E. 14-4.) Sanchez filed his own brief raising many, but not all, of the claims he raised in his present habeas petition. (D.E. 14-6.) The court of appeals affirmed the trial court's decision. (D.E. 14-3.) Sanchez filed a petition for

discretionary review before the Texas Court of Criminal Appeals (TCCA), but the TCCA refused review on September 14, 2016. (D.E. 15-10.) The Court of Appeals for the First District issued a mandate finalizing Sanchez's judgment on October 21, 2016.

Sanchez filed an application for writ of habeas corpus in the trial court on or before October 20, 2016 (D.E. 15-26), which the TCCA dismissed on August 23, 2017. Because the First Court of Appeals' mandate had not issued when Sanchez filed the application, his conviction was not yet final. The TCCA lacked jurisdiction to consider his application. (D.E. 15-21.)

Sanchez filed his federal habeas petition under 28 U.S.C. § 2254 on December 1, 2017. (D.E. 1.) This court previously found that some of Sanchez's claim were exhausted and others were not. (D.E. 18.) Sanchez elected to proceed with his federal habeas petition only on the exhausted claims. (D.E. 21 at 3–4.)

2. *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" the Supreme Court, or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

When, as here, there is no reasoned state-court decision on the merits, the federal court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018); *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018). If such disagreement is possible, then the petitioner's claim must be

denied. *Beaudreaux*, 138 S. Ct. at 2558. The Supreme Court has often emphasized that "this standard is difficult to meet" "because it was meant to be." *Id.*; *Mejia*, 906 F.3d at 314.

### 3. Sanchez's Claims

Sanchez raises the following grounds for relief:

1. That his guilty plea was involuntary due to ineffective assistance of trial counsel, because his trial counsel failed to:
   a. challenge an unlawful blood draw taken without a warrant while Sanchez was unconscious;
   b. challenge a juvenile arson charge used as an enhancement in Sanchez's indictment;
   c. challenge the deadly weapon finding in his judgment;
   d. argue, based on an autopsy report, that Efrain Salazar's death was an accident.
2. That he was denied effective assistance of appellate counsel because his appellate counsel failed to:
   a. file a motion for a new trial,
   b. raise ineffective assistance of trial counsel on appeal, and
   c. file an appeal brief.

### A. Ineffective assistance of counsel

*(1)* Strickland *standard for ineffective assistance of counsel*

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

3

To prevail on a claim of constitutionally ineffective assistance of counsel, a petitioner must show (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018). It is "all the more difficult" where, as here, a defendant challenges a merits denial of his *Strickland* claim under AEDPA. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Mejia*, 906 F.3d at 315. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105; *Mejia*, 906 F.3d at 315.

*Deficient performance.* Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. In reviewing counsel's performance, courts must "be highly deferential," eliminate the "distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

"Defense counsel's strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Mejia*, 906 F.3d at 316 (5th Cir. 2018) (internal citations and quotations omitted). "A court reviewing those choices is required not simply to give counsel the benefit of the doubt, but to affirmatively entertain the range of possible reasons he may have had for proceeding as he did." *Id.* (internal quotation marks omitted). "[C]ounsel is afforded particular leeway where a potential strategy carries double-edged consequences." *Id.* (internal quotation marks omitted). "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Richter*, 562 U.S. at 105; *Mejia*, 906 F.3d at 317. "It is 'all too tempting' to 'second-guess counsel's

assistance after conviction or adverse sentence.'" *Richter*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). "Strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 562 U.S. 115, 125 (2011) (holding that trial counsel's decision not to file a motion to suppress before advising the client to plead guilty did not warrant habeas relief).

*Prejudice.* Under *Strickland*, prejudice is "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. It is not enough to show that errors had "some conceivable effect" on the outcome; rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

In the context of a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Richter*, 562 U.S. at 112).

### a) Blood draw challenge

Sanchez argues that his guilty plea was involuntary because his trial counsel failed to challenge the introduction of blood evidence, which was drawn from him while he was unconscious after the accident. (D.E. 1 at 24, 25, 32.) The blood tests showed that his blood contained 0.169 grams of ethanol per 100 milliliters of blood

5

and indicated that Sanchez had used cocaine and cannabis. (D.E. 14-27 at 63–64.)

The Texas Court of Criminal Appeals denied this claim on the merits without issuing findings of fact or conclusions of law. This court therefore "must determine what arguments or theories ... could have supported the state court's decision" and "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with" Supreme Court precedent. *Beaudreaux*, 138 S. Ct. at 2558. After reviewing the entire record, this court concludes that the TCCA could reasonably have found that Sanchez was not denied effective assistance of counsel, and could have supported that decision with the following legal and factual analysis.

As to the deficiency prong, the state habeas court could reasonably have found that Sanchez's trial counsel performed sufficiently. First, the state habeas court could reasonably have determined that Sanchez's trial lawyer was not deficient because a motion to suppress the blood evidence would have been futile. The Supreme Court has "held that forcing drunk-driving suspects to undergo a blood test does not violate their constitutional right against self-incrimination." *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2533 (2019) (citing *Schmerber v. California*, 384 U.S. 757, 765 (1966)). Moreover, blood alcohol content tests are Fourth Amendment searches, but the Fourth Amendment permits warrantless BAC tests under "exigent circumstances" to "prevent the imminent destruction of evidence." *Mitchell*, 139 S. Ct. at 2533 (citing *Missouri v. McNeely*, 569 U.S. 141, 149 (2013)). Exigent circumstances justify a blood test of a drunk driver who has been in a car accident. *Schmerber*, 384 U.S. at 770–71. Exigent circumstances also justify a blood test of a drunk driver who is unconscious. *Mitchell*, 139 S. Ct. at 2533. The TCCA could reasonably have determined that under *Schmerber*, the exigent circumstances of the

6

automobile collision, as well as Sanchez's unconscious state, justified drawing Sanchez's blood without a warrant.

Second, the state habeas court could have determined that Sanchez's lawyer exercised reasonable competence in investigating and evaluating the blood draw about which Sanchez complains. He served a subpoenas duces tecum on Ben Taub Hospital for medical records concerning the blood draw. (D.E. 14-20 at 5–12.) He obtained a court order "For Discovery and Inspection of Blood Testing Records" ordering the State to produce documentation concerning lab accreditation, policies, practices, quality control, proficiency testing results for any person within the chain of custody for Sanchez's sample, and many other categories of documentation. (D.E. 14-20 at 17–21.) These actions indicate that his lawyer's decision not to pursue a motion to suppress was a considered, strategic decision, rather than a mere oversight.

Third, the state habeas court could have determined that Sanchez's lawyer reasonably weighed the possible risks and benefits of pursuing a plea deal as opposed to going to trial given other evidence against Sanchez. Sanchez stood to gain from pleading guilty. In exchange for his plea of guilty, the state agreed to a forty-year cap on his possible sentence. (D.E. 14-23 at 7; D.E. 14-26 at 4.) On the other hand, the risks at trial were significant. A witness identified Sanchez's car driving erratically on the wrong side of the highway before Sanchez hit Salazar. (D.E. 14-27 at 61–62.) Another witness reported the strong odor of alcoholic beverage on Sanchez's breath when he was admitted to the hospital. (D.E. 14-16 at 10.) The State also noticed its intent to use evidence of Sanchez's prior convictions and extraneous offenses, including prior convictions for driving while intoxicated. (D.E. 14-22 at 2–4.)

Perhaps these witnesses would not have ultimately testified if Sanchez did go to trial. Maybe Sanchez's lawyer could have excluded the prior convictions. But "[a]ll these possibilities are speculative," and "[w]hat counsel knew at the time was that the existence of these

7

[witnesses and convictions] posed a serious strategic concern." *Premo*, 562 U.S. at 125–27. At most, fairminded jurists could disagree that these arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Beaudreaux*, 138 S. Ct. 2555, 2558 (2018). Therefore, Sanchez's claim must be denied.

As to the prejudice prong, the TCCA could reasonably have determined that challenging the blood draw would not have created a reasonable probability that Sanchez would have decided not to plead guilty. *See Premo*, 562 U.S. at 129. To prevail on prejudice before the state court, Sanchez had to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

> Deference to the state court's prejudice determination is all the more significant in light of the uncertainty inherent in plea negotiations: The stakes for defendants are high, and many elect to limit risk by forgoing the right to assert their innocence. A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence.

*Premo*, 562 U.S. 115, 129 (2011). The TCCA could reasonably have found that challenging the blood draw would not have changed the likelihood of Sanchez's guilty plea because the challenge would have been overruled, and the evidence admitted. Or the TCCA could reasonably have found that even if the challenge were successful, other evidence against Sanchez was strong enough that he was not reasonably likely to insist on going to trial anyway. *See id.*

This court finds that the TCCA's decision, which may have been supported by any of the above legal arguments or theories, was not "contrary to," or "an unreasonable application of, clearly established Federal law" as determined by the Supreme Court. 28

U.S.C. § 2254(d). Sanchez's claim does not warrant federal habeas relief.

### b) Juvenile arson charge

Sanchez argues that his trial counsel was ineffective for failing to challenge a juvenile arson charge included as an enhancement paragraph in Sanchez's indictment. (D.E. 1 at 26, 29, 32.) Sanchez's argument is not supported by the facts. The state abandoned the felony arson enhancement paragraph. (D.E. 14-4 at 8; D.E. 14-10 at 7–14-11 at 1.) This claim is meritless.

### c) Deadly weapon finding

Sanchez argues that his indictment did not explicitly state that he used a deadly weapon in the commission of the crime, but his judgment includes a finding that he used a deadly weapon. (D.E. 1 at 27, 29.) Sanchez claims his trial counsel was ineffective for failing to challenge the deadly weapon finding.

Assuming, without finding, that counsel's failure to challenge the deadly weapon finding was deficient, the TCCA could reasonably have found that Sanchez could not show prejudice. Under Texas Code of Criminal Procedure article 42.12 in effect at the time of Sanchez's sentencing, certain defendants were eligible for community supervision instead of imprisonment. Tex. Code Crim. Proc. art. 42.12 § 3(a) (repealed effective January 1, 2017). Defendants adjudged guilty of murder or found to have used a deadly weapon in the commission of an offense were not eligible for community supervision under that provision. Tex. Code Crim. Proc. art. 42.12 § 3g(a)(1)(A), (a)(2). Because Sanchez was convicted of murder, he was ineligible for community supervision, with or without the deadly weapon finding. Therefore, Sanchez cannot show that he was prejudiced by his trial counsel's decision not to challenge the prior conviction. The TCCA's denial of this claim was reasonable, and Sanchez is not entitled to federal habeas relief.

*d) Autopsy report*

Sanchez argues that his trial counsel was ineffective because he failed to argue that an autopsy report contained "a clear ruling which indicated" Salazar's death was an "'accident' and not a homicide or murder." (D.E. 1 at 24.)

Sanchez does not attach, and the record does not include, any autopsy report. Sanchez's failure to submit evidence on this issue would be enough for the TCCA reasonably to deny this claim. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

Alternatively, the TCCA could reasonably have determined that Sanchez's lawyer was not ineffective for failing to raise this argument because the argument is meritless. The TCCA could reasonably have interpreted the alleged autopsy report's statement that Salazar died in an "accident" as a colloquial shorthand for "automobile collision." In any event, autopsy reports are not judicial rulings entitled to preclusive effect in state criminal proceedings.

Failing to raise a meritless argument does not fall below the *Strickland* standard. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("[C]ounsel is not required to make futile motions or objections.").

B. *Ineffective assistance of appellate counsel*

Sanchez argues that his appellate counsel were ineffective because they failed to (1) file a motion for a new trial, (2) raise an ineffective assistance of trial counsel claim on appeal, and (3) file an appeal brief. (D.E. 1 at 36–37.) At bottom, Sanchez's claim is that his

appellate counsel was ineffective for failing to discover nonfrivolous issues and to file a merits brief raising them. The exhausted grounds Sanchez argues would form the basis for any of those actions are: (1) that his trial counsel should have challenged the blood draw and (2) that his trial counsel should have challenged the sufficiency of the indictment against him. The TCCA denied his ineffective assistance of appellate counsel claim on the merits without written findings of fact or conclusions of law. The TCCA could reasonably have determined that Sanchez was not prejudiced by his appellate counsel's actions because Sanchez did not identify any meritorious grounds for reversal.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. Const. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393–95 (1985); *Strickland*, 466 U.S. at 688; *Anders v. California*, 386 U.S. 738, 744 (1967). Sanchez must show that "his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If Sanchez "succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id.*

Sanchez's ineffective assistance of appellate counsel claim depends on him identifying a meritorious ground that would have had a reasonable probability of prevailing on appeal. He has not done so, and he therefore cannot establish that he was prejudiced by his appellate counsel's performance under *Strickland*. Again, this court has found that the TCCA could reasonably have determined that the blood draw was not unconstitutional. *See* Section 3(A)(1)(a), *supra* (citing *Schmerber v. California*, 384 U.S. 757, 765 (1966)). And this court already found that the TCCA could reasonably have

found that Sanchez's claims as to the sufficiency of his indictment are meritless. *See* Section 3(A)(1)(b)–(c), *supra*. Therefore, even assuming appellate counsel's deficient performance, the TCCA could reasonably have determined that Sanchez was not prejudiced by his appellate counsel's decision not to raise the blood draw or the indictment through a motion for new trial, a claim of ineffective assistance of trial counsel, or any appellate briefing.

*4. Conclusion*

The court recommends that Davis's motion for summary judgment be granted and Sanchez's petition be denied with prejudice. Any remaining motions are terminated as moot. Sanchez has not met his threshold burden of demonstrating that the state habeas court's denial of these claims constitutes an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence. Similarly, Sanchez has not made a substantial showing that he was denied a constitutional right or that it is debatable whether this court is correct in its ruling. Therefore, this court recommends that a certificate of appealability not be issued. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on July 23, 2019.

Peter Bray
United States Magistrate Judge